IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REMEKA COOK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-02073-B-BK |
| | § | |
| CAROLYN COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The cause is now before the Court on the parties' cross-motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 19) be **GRANTED**, Defendant's *Motion for Summary Judgment* (Doc. 21) be **DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED**.

### I. BACKGROUND[1]

**A.   Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). In August 2009, Plaintiff filed for DIB and SSI, claiming that she had been disabled since the prior month after breaking her legs in a car accident. (Tr. 15, 57, 121-31). Her application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). (Tr. 1-4, 12-23, 57-61, 67-68, 73, 77-78).

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

B.  **Factual Background**

At the time of her alleged onset of disability, Plaintiff was 29 years old with an 11th-grade education and past work experience as a packer, cafeteria worker, waitress, cashier, home health aide, and telemarketer. (Tr. 121, 182, 186, 191). In July 2009, Plaintiff suffered multiple fractures to her lower legs and ankles when she drove her car into a brick wall at approximately 65 miles per hour. (Tr. 260, 263, 268, 278). Plaintiff was admitted to the hospital where Dr. Paul Freudigman, an orthopedic trauma specialist, diagnosed her with (1) a closed right fracture of the bimalleolar ankle (the lower part of the fibula and of the malleolus of the tibia, with outward displacement of the foot);[2] and (2) a left open fracture and dislocation of the talus (the foot bone that articulates with the tibia and fibula to form the ankle joint). (Tr. 288). He performed an open reduction internal fixation of the right ankle with the installation of a plate and screws. (Tr. 288-89). Dr. Freudigman irrigated and debrided Plaintiff's left open ankle fracture and installed a spanning fixator to the exterior of her left lower leg. (Tr. 288). Dr. Freudigman noted that Plaintiff had suffered extensive injury and bone loss to the left leg and her prognosis was poor because, at best, she would end up with a healed arthrodesis (the stiffening of a joint by operative means). (Tr. 289). Plaintiff was discharged a week later and placed on non-weight-bearing status of both lower extremities. (Tr. 288, 299).

Plaintiff followed up with Dr. Freudigman in August and September 2009 for post-operative wound care and ongoing evaluation of her left ankle, which had yet to be reconstructed pending reduction in soft tissue swelling. (Tr. 437, 442, 444, 446, 448). September 2009 x-rays

---

[2] Medical terms are defined by reference to *Stedman's Medical Dictionary* (27th ed 2000), which is available on Westlaw.

of the left ankle still indicated complex trimalleolar fracture of the ankle with external fixation hardware spanning the ankle. (Tr. 363). There was no change in alignment or position when compared to July 27, 2009 post-operative films. (Tr. 363). On review of the x-rays, Dr. Freudigman also suspected unchanged fracture of the talar dome. (Tr. 363). He observed persistent swelling in the lower extremities, and he placed Plaintiff on continued non-weight-bearing status of the left leg with orders to keep her left foot elevated. (Tr. 437, 442, 444, 446, 448).

In October 2009, Dr. Freudigman removed the external fixture from Plaintiff's left lower leg and performed an open reduction internal fixation of the medial malleolus of her left ankle, which involved the placement of a plate and screws. (Tr. 351-52). However, during the operation, Plaintiff's fibula was found to be extensively short, angulated, and extremely low in bone density. (Tr. 351). Given that the joint line was "completely smashed," Dr. Freudigman determined it would be impossible to reconstruct her fibula, so he elected to reconstruct only the medial side. (Tr. 351-52). Dr. Freudigman noted that Plaintiff would require a formal arthrodesis when she had bone stock in the tissues. (Tr. 352). Post-operative x-rays of Plaintiff's left ankle revealed some lateral angulation at the distal fibular fracture and a partly collapsed talus. (Tr. 362). On discharge from the hospital following her surgery, Plaintiff was given a walker, told to bear weight as tolerated, and ordered to keep her left leg elevated higher than her heart. (Tr. 370, 385).

In October and November 2009, Plaintiff reported that she was doing well post-operatively and not taking any pain medication, but she was still using a walker to ambulate. (Tr. 434-35). November 2009 follow-up x-rays of her left ankle showed continued posttraumatic

deformity of the distal fibula, fracture of the talar dome, and significant soft tissue swelling surrounding the ankle. (Tr. 368). In January 2010, Plaintiff reported to Dr. Freudigman that she needed crutches to walk because she limped without them. (Tr. 432).

In February 2010, while x-rays of the right ankle revealed that the bone was healing well, x-rays of Plaintiff's left ankle indicated significant tibiotalar collapse, destruction of the ankle joint, and shortening of the fibula. (Tr. 470). Dr. Freudigman prescribed a six-week course of physical therapy to include weight-bearing as tolerated with crutches and a brace for her left ankle. (Tr. 465-66). Between March and May 2010, Plaintiff attended 16 sessions of physical therapy though she failed to demonstrate functional gait patterns and was noted to ambulate with a step-to gait. (Tr. 492-502).

In June 2010, Dr. Freudigman opined that Plaintiff's prognosis was fair. (Tr. 512). He noted that, under the requirements in the Act's Listing of Impairments Sections 1.02A (Major Dysfunction of a Joint) and 1.03 (Reconstructive Surgery or Surgical Arthrodesis of a Major Weight-Bearing Joint), Plaintiff experienced (1) chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint; (2) major dysfunction of a joint characterized by a gross anatomical deformity; (3) findings on appropriate medically acceptable imaging (or direct observation during surgery) of joint space narrowing, bony destruction, or ankylosis of the affected joint; and (4) reconstructive surgery or surgical arthrodesis of a major weight-bearing joint. (Tr. 513). Additionally, Dr. Freudigman opined that Plaintiff could not (1) walk a block at a reasonable pace on rough or uneven surfaces; (2) use standard public transportation, which could require climbing on and off a bus or train platform; (3) carry out routine ambulatory activities such as shopping and banking at a reasonable pace

4

without extra breaks; or (4) make four to six trips (20-25 feet each way) up and down steps while carrying an object weighing approximately eight to ten pounds at a reasonable pace without a break. (Tr. 513-14). Dr. Freudigman also asserted that Plaintiff could never climb, stoop, crouch, kneel, or crawl and could only occasionally balance. (Tr. 515). In Dr. Freudigman's opinion, Plaintiff's signs, symptoms and the objective medical findings indicated that she suffered from an orthopedic condition that is "medically equivalent" to and just as severe as the criteria of both Listing 1.02 and Listing 1.03. (Tr. 514).

**C.     The ALJ's Findings**

In January 2011, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (Tr. 15). At step one of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her disability onset date in July 2009. (Tr. 17). At step two, the ALJ found that Plaintiff's right ankle fracture and left talus fracture dislocation were severe impairments. (Tr. 17). At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment. (Tr. 19). The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of sedentary work. (Tr. 19). In assessing Plaintiff's RFC, the ALJ explained that he viewed Dr. Freudigman's opinion that Plaintiff's impairments met Listings 1.02 and 1.03 as inconsistent with the weight of the medical evidence because Plaintiff had reported in October 2009 that she was doing well and had no complaints, and she testified that she could walk slowly without crutches but with a limp. (Tr. 22). The ALJ ruled at step four that Plaintiff could perform her past relevant work as a telemarketer. (Tr. 22). Therefore, the ALJ concluded that Plaintiff had not been under a disability from her alleged onset date through the date of the decision. (Tr. 22).

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga*

*v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III.  ARGUMENT AND ANALYSIS

Plaintiff argues that the ALJ erred by not identifying the Listing that she purportedly failed to meet and explaining why she did not meet the Listing. (Doc. 20 at 18). She asserts that the ALJ's findings were legally deficient and unsupported by substantial evidence.[3] *Id.* at 13, 18. Plaintiff contends that she was prejudiced by the ALJ's error because she meets Listings 1.02A and 1.03. *Id.* at 20-26. She requests that the Court reverse and remand for an award of benefits or, alternatively, for further administrative proceedings. *Id.* at 27.

Defendant responds that the ALJ gave supported reasons for not giving any weight to Dr. Freudigman's conclusory opinion that Plaintiff met Listings 1.02A and 1.03 such as the opinion's inconsistency with the weight of the medical evidence and the lack of a nexus between Plaintiff's impairments and the limitations the doctor assessed. (Doc. 21 at 7-8). Defendant also notes that

---

[3] While Plaintiff could have briefed the substantial evidence argument more thoroughly, the undersigned believes the issue is properly before the Court.

Dr. Freudigman reached his conclusion about Plaintiff meeting the Listings 40 days before the one-year anniversary of her accident, and she thus failed to show that the injury was disabling for at least 12 months. *Id.* at 8.

A claimant may satisfy her burden of proving disability if she shows that her impairment or impairments meet or equal a Listing. 20 C.F.R. § 404.1520(a)(4)(iii), (d). Although an ALJ has a duty to analyze a claimant's impairments under every applicable Listing, an ALJ's failure to consider a specific Listing is harmless if the record shows such Listing is not met. *See Audler v. Astrue*, 501 F.3d 446, 448-49 (5th Cir. 2007). In *Audler*, the ALJ summarily concluded that the claimant's impairments did not meet or equal any of the impairments in the Listings, but did not identify which Listing the claimant failed to meet and did not explain how she reached that conclusion. *Id.* at 448. The appellate court held that "[s]uch a bare conclusion is beyond meaningful judicial review." *Id.* (quotation omitted). The court noted that while the ALJ was not always required to do an exhaustive point-by-point discussion, the ALJ had offered nothing to support her conclusion that the claimant failed to meet a Listing and thus the reviewing court could not tell whether her decision was supported by substantial evidence. *Id.* Moreover, the error was not harmless because the claimant appeared to meet one of the Listings. *Id.* at 449.

In the decision at issue here, the ALJ did not explain in his discussion of step three which Listings Plaintiff failed to meet and why. (Tr. 19). However, in assessing Plaintiff's RFC, the ALJ did directly address Dr. Freudigman's opinion that Plaintiff's impairments met the criteria of Listings 1.02 and 1.03. (Tr. 22). The ALJ explained that he viewed Dr. Freudigman's opinion in that regard as inconsistent with the weight of the medical evidence because Plaintiff had reported in October 2009 that she was doing well and had no complaints, and she testified that

8

she could walk slowly without crutches but with a limp. (Tr. 22). The Court thus views this case as distinguishable from *Audler* where the ALJ had offered nothing to support her conclusion that the claimant failed to meet a Listing.

The case at bar is more analogous to *Morgan v. Astrue*, No. 4:07-CV-546-Y, 2008 WL 2645481, *9 (N.D. Tex. 2008). There, the ALJ did not identify the Listing governing musculoskeletal disorders by number. However, he did explain that there was "no evidence the claimant has experienced the degree of functional limitation and neurological involvement contemplated in the Listings criteria for a musculoskeletal impairment," and he also cited to the medical reports supporting his assessment. *Id.* The district court found that, under those circumstances, the ALJ had not violated *Audler* by summarily concluding that the claimant had no Listing-level impairment, and his written decision was adequate to permit meaningful judicial review. *Id.* The same rationale applies in this case. The ALJ's statement that he disagreed with Dr. Freudigman's opinion that Plaintiff satisfied Listings 1.02 and 1.03 and explanation why suffice to allow for meaningful judicial review. The Court next reviews whether the ALJ's decision that Plaintiff's impairments did not meet the Listings is supported by substantial evidence.

Listing 1.02A, which covers musculoskeletal disorders, requires that a claimant exhibit a major dysfunction of a joint characterized by (1) gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability); (2) chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint; (3) findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint; (4) with involvement of one major peripheral weight-bearing joint (i.e., hip or

9

ankle), resulting in an inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02A. Listing 1.03, which addresses reconstructive surgery of a major weight-bearing joint, requires that a claimant demonstrate an inability to ambulate effectively and that a return to effective ambulation did not occur within 12 months of onset. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.03.

Listing 1.00B2b defines "an inability to ambulate effectively" as an "extreme limitation of the ability to walk," i.e., an impairment that "interferes very seriously with a claimant's ability to independently initiate, sustain, or complete activities." Ineffective ambulation generally means that one has insufficient leg function to allow independent walking without the use of hand-held assistive devices that limit the functioning of both upper extremities. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00B2b. "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." *Id.* at § 1.00B.2.b.(2). Examples of ineffective ambulation include, but are not limited to:

> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.*

Addressing the preliminary requirement of Listings 1.02 and 1.03, Plaintiff's left ankle is a major peripheral weight-bearing joint. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.02A. As required by Listing 1.02A, Plaintiff exhibited on x-rays gross anatomical deformities in the form

of bony destruction as evidenced by her July 2009 x-rays, which showed a left open fracture dislocation of the talus. (Tr. 288). Such deformity was further noted in Plaintiff's November 2009 x-rays of the left ankle, which showed continued posttraumatic deformity of the distal fibula and fracture of the talar dome. (Tr. 368). Additionally, February 2010 x-rays of Plaintiff's left ankle indicated significant tibiotalar collapse, destruction of the ankle joint, and shortening of the fibula, thereby further demonstrating on imaging gross anatomical deformities in her bone structure. (Tr. 470). Satisfying Listing 1.02A's requirement of chronic pain or stiffness with limitation of motion, Plaintiff described to her doctor an aching pain and stiffness in the ankle, she took pain medication as needed, and she testified to experiencing some pain, a lot of stiffness, and swelling in the ankle. (Tr. 34, 39, 396, 399, 400, 436, 445, 447, 448, 449-50). Plaintiff also had diminished range of motion in the left ankle as required under Listing 1.02A. (Tr. 492-93, 495-96, 499-500, 510). Nevertheless, the record also contains evidence that Plaintiff did not take pain medication at times, and the ALJ found Plaintiff's complaints of the limiting effects of her symptoms to not be fully credible. (Tr. 22, 432, 435).

      Finally, in satisfaction of Listing 1.02A's and 1.03's requirement that she be unable to ambulate effectively, Plaintiff presented evidence that she has insufficient leg function to independently walk without the use of hand-held assistive devices that limit the functioning of her arms. She was prescribed at various times, a wheelchair, a walker, and crutches by Dr. Freudigman, all of which would require Plaintiff to use her arms. (Tr. 33, 429, 432, 434). Both Plaintiff and Dr. Freudigman averred that she could not walk a block at a reasonable pace on rough or uneven surfaces, (Tr. 36, 513), Plaintiff testified that she had to scoot up and down the steps in her apartment, (Tr. 36), and Dr. Freudigman opined that Plaintiff could not climb up and

11

down stairs four to six times, (Tr. 514).  Plaintiff's physical therapist noted that despite numerous weeks of therapy, Plaintiff failed to demonstrate functional gait patterns and was noted to ambulate with a step-to gait.  (Tr. 492-502). Dr. Freudigman also opined that Plaintiff could not use standard public transportation or carry out routine ambulatory activities at a reasonable pace without extra breaks.  (Tr. 513).  Therefore, substantial evidence arguably does not support the ALJ's decision that Plaintiff did not satisfy Listing 1.02A.

The only remaining issue left to decide is whether to reverse and remand for further proceedings before the ALJ or for an award of benefits as Plaintiff requests.  The fourth sentence of 42 U.S.C. §405(g) provides that "[t]he [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  When an ALJ's decision is not supported by substantial evidence and the uncontroverted evidence clearly establishes that the claimant is entitled to benefits, the case may be remanded with the instruction to make an award of benefits.  *See Taylor v. Bowen*, 782 F.2d 1294, 1298-99 (5th Cir. 1986).  The record, however, must enable the court to "determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C, 2009 WL 3029772, *10 (N.D. Tex. Sept. 22, 2009).

As discussed above, the ALJ's decision that Plaintiff did not meet Listing 1.02A appears not to be supported by substantial evidence.  *Taylor*, 782 F.2d at 1299.  Nevertheless, the ALJ found that neither Plaintiff's allegations nor Dr. Freudigman's opinions regarding whether she satisfied the Listing should be given full weight.  (Tr. 22).  Instead, the ALJ gave more weight to the opinion of a state non-examining physician who did not address Plaintiff's condition after

October 2009.  (Tr. 22).  In light of these conflicts, the undersigned recommends that this case be remanded to the Commissioner for further administrative action.  Such action should include further development of the medical record regarding the limitations imposed by Plaintiff's impairments, including any developments that have occurred since the date of the ALJ's decision.  Because the undersigned finds that reversal is warranted on this ground, the Court need not address Plaintiff's argument that the ALJ erred in determining that she did not satisfy Listing 1.03.  On remand, however, the ALJ should address whether Plaintiff met the duration requirement of Listing 1.03 as she appears to have satisfied the Listing's other requirements.

## IV.  CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 19) be **GRANTED**, Defendant's *Motion for Summary Judgment* (Doc. 21) be **DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED**.

**SO RECOMMENDED** on January 16, 2014.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE